# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Joan B. Gottschall | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 4933 | **DATE** | 3/10/2003 |
| **CASE TITLE** | Evergreen Marine Corporation vs. Division Sales, Inc., et al. | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion & Order. Defendant American National Bank and Trust Company of Chicago's ("ANB") motion to adopt motion to dismiss [79-1] is granted. Defendant Eber's motion to dismiss the second amended complaint [76-1], which defendant ANB joined, is denied. Additionally, the motion to dismiss filed by defendants Division Sales U.S., L.L.C., Division Sales International, L.L.C. and Stephen Lubelfeld [61-1] is granted in part and denied in part.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | |
| | No notices required. | number of notices | |
| X | Notices mailed by judge's staff. | | |
| | Notified counsel by telephone. | date docketed | |
| | Docketing to mail notices. | | |
| | Mail AO 450 form. | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | |

MAR 1 2 2003

**Document Number**

86

U.S. DISTRICT COURT
CLERK

03 MAR 12 AM 8:08

FILED-TC
01 C 4933

courtroom deputy's initials

Date/time received in central Clerk's Office

date mailed notice

mailing deputy initials

DOCKETED

MAR 1 2 2003

EVERGREEN MARINE CORPORATION,    )
                                 )
                    Plaintiff,   )    Case No. 01 C 4933
                                 )
        v.                       )
                                 )
DIVISION SALES, INC., et al.     )    Judge Joan B. Gottschall
                                 )
                    Defendants.  )

## MEMORANDUM OPINION & ORDER

In its eight-count Second Amended Complaint, plaintiff Evergreen Marine Corp.

("Evergreen") raised claims against Division Sales, Inc. ("DSI"), Division Sales U.S., L.L.C.

("DS-U.S."), Division Sales International, L.L.C. ("DS-International"), Stephen Lubelfeld,

Michael J. Eber, and American National Bank and Trust Company of Chicago ("ANB").

Specifically, Evergreen has raised claims for: replevin of certain goods against all defendants

(Count I); fraud and conversion against DSI and Lubelfeld (Counts II and III); breach of contract

against DSI, Eber, DS-U.S. and DS-International (Counts IV-VI); and conversion against ANB

(Count VII), DS-U.S., DS-International, and Lubelfeld (Count VIII). Defendant Eber filed a

motion to dismiss the counts against him, which ANB joined. Likewise, defendants DS-U.S.,

DS-International and Lubelfeld moved to dismiss all counts against them.[1] For the reasons stated

below, Eber's motion to dismiss, which ANB joined, is denied. Further, the motion to dismiss

filed by DS-U.S., DS-International and Lubelfeld is granted in part and denied in part.

### Background

Evergreen is a Taiwanese ocean carrier. For more than fifteen years, Evergreen had a

---

[1]Defendant DSI has not answered or otherwise pled.



business relationship with DSI, an Illinois wholesaler of general consumer merchandise. Evergreen would transport by sea shipments of general consumer merchandise from various ports in Asia to ports in California or Washington. From there, Evergreen transported the merchandise by rail to Chicago where the merchandise was made available for pick up by DSI. At some point during the fifteen-year business relationship, a business practice developed that allowed DSI to obtain the merchandise without presenting the original bill of lading for the merchandise to Evergreen at the time of pickup. In May 1999, DSI gave Evergreen a letter "stating that it would not hold Evergreen responsible for the release of goods to [DSI] without the original bill of lading, and that [DSI] would indemnify Evergreen for any delivery of goods without the original bill of lading." (Sec. Am. Compl. at ¶ 12.) Originally, DSI's bank faxed Evergreen a copy of the original bill of lading before Evergreen released the merchandise; then, within a day or two after DSI retrieved the merchandise, the bank sent the original bill of lading to Evergreen by U.S. mail. In early 2000, however, DSI unilaterally changed this business practice: it began sending the original bills of lading to Evergreen "in bunches, once or twice a month" and stopped faxing copies of the original bills of lading altogether. (*Id.* at ¶ 13.)

At issue in this litigation is general commercial merchandise that Evergreen transported and delivered to DSI between the Fall of 2000 and Spring of 2001 (the "Cargo"). Evergreen instituted this action after discovering that DSI was on the verge of bankruptcy and did not have the original bills of lading for the Cargo. In its original complaint, filed on June 27, 2001, Evergreen sought a temporary restraining order ("TRO") to prevent DSI from selling or otherwise disposing of the Cargo, as well as replevin of the Cargo from DSI and injunctive relief. That same day, Judge Wayne Andersen, as Emergency Judge, entered the requested TRO against

2

DSI. The following week, DSI and Evergreen informed this court that they had reached an agreement to resolve the matters addressed by the TRO. On July 3, 2001, this court entered an agreed order and vacated the TRO (the "Agreed Order").

The Agreed Order applied to the portion of the Cargo that remained in DSI's possession as of June 27, 2001. Under the terms of the Agreed Order, DSI could either return that Cargo to Evergreen or retain it. If DSI elected to retain it, DSI could sell the Cargo only if it complied with further provisions of the Agreed Order: specifically, DSI could sell the Cargo only in the ordinary course of business, could not sell it below cost, had to deposit any sales proceeds into a special segregated account and only access only those proceeds attributable to profit rather than cost, as well as other requirements.

In the eight days following the entry of the Agreed Order, DSI sold approximately 2393 cartons of the Cargo. Then on July 11, 2001, DSI assigned its assets—including the remaining Cargo—for the benefit of creditors to assignee Michael J. Eber of High Ridge Partners, Inc. ("High Ridge"). Because the assignment for the benefit of creditors included the Cargo, Evergreen contends the assignment violated the Agreed Order.

When Evergreen learned of the assignment for the benefit of creditors, it filed an additional count against High Ridge, who it believed to be the assignee, seeking replevin of the Cargo and a TRO to prevent the assignee from disposing of the Cargo. As it turned out, Eber was the assignee, not High Ridge. At the TRO hearing on July 26, 2001, Eber's attorney informed the court that Eber agreed to be bound by the terms of the Agreed Order. Evergreen later added a claim for a TRO, replevin of the Cargo and injunctive relief against DS-International because Evergreen understood that DS-International was in the process of buying

3

DSI's assets from Eber.

Subsequently, in an asset purchase transaction that closed on September 25, 2001, Eber sold the assigned assets (apart from certain specified, excluded assets) to DS-U.S. According to the bill of sale, "any rights in product or inventory subject to Evergreen litigation" (*i.e.*, this action) were excluded from the sale. (Sec. Am. Compl. at Ex. A to Ex. 5.)

On October 4, 2001, a default judgment was entered in this action against DS-International and on October 11th an order was entered to enforce the default judgment. DS-U.S. (which had been incorrectly named as DS-International) subsequently moved to vacate the default judgment. On October 25th, the court granted DS-U.S.'s motion and vacated both the October 4th and October 11th orders after DS-U.S. represented to the court that DS-U.S. had possession of the Cargo. DS-U.S. and DS-International (collectively, the "DS Entities"), through their attorney, then entered into an oral agreement with Evergreen under which the DS Entities agreed not to dispose of the Cargo (the "Standstill Agreement").

Pursuant to the court's order of December 6, 2001, the Standstill Agreement remains in effect until further order of the court. No further order has been entered, but according to Evergreen, the DS Entities have sold approximately 2954 cartons of Cargo.

## Analysis

Before the court are defendants' respective motions to dismiss the claims against (1) Eber and ANB, and (2) the DS Entities and Lubelfeld. The court will address each in turn, but first addresses the viability of Evergreen's breach of contract claims based on various defendants' breaches of agreements memorialized in orders entered by this court.

4

## I. Breach of Contract Claims Based on Breaches of Agreements Memorialized in this Court's Orders

Evergreen sued Eber and the DS Entities for breach of contract based on Eber's purported breach of the agreement memorialized in the Agreed Order (Count V) and the DS Entities' purported breach of the agreement memorialized in the Standstill Agreement (Count VI), respectively. The DS Entities contend (in a one-sentence argument) that the court should dismiss the breach of contract claim because their breach of the terms of the Standstill Agreement is punishable by contempt, not liability for breach of contract. The court addresses this argument as it relates to the breach of contract claims against both the DS Entities and Eber even though Eber did not make this argument in his motion to dismiss.

Allowing parties to bring claims for breach of contract based on violations of agreements memorialized in agreed court orders is a troublesome idea. Agreed orders are a routine component of every action. Most courts encourage parties to resolve disputes that arise during the course of litigation by agreement whenever possible. Parties frequently reach an agreement in part to appease the court, and in part because they understand that not all battles are worth fighting. To treat such agreements as potential contracts could well discourage parties from consenting to agreed orders because the agreement could expose the party to liability for breach of contract that would not exist under the virtually identical situation where the parties allowed the court to enter an order without contest. And treating agreed orders as contracts could unduly complicate judicial proceedings, giving rise to satellite litigation and, given the lengthy statutes

of limitation applicable in contract actions,[2] inviting the parties to litigate breaches of agreed court orders years after the original litigation ended. To make matters worse, the lawyers (and the judge) could be the witnesses—a factor which is far from insignificant. Under the American Bar Association's Model Rules of Professional Conduct ("MRPC"), if a lawyer is "likely to be a necessary witness" in an action, that lawyer cannot also act as advocate (except under limited circumstances). MRPC 3.7; *Jones v. City of Chicago*, 610 F. Supp. 350, 356 (N.D. Ill. 1984). As a result, any lawyer who is a necessary witness will be subject to disqualification. For that matter, the witness-lawyer's firm may also be disqualified, depending on the circumstances. MRPC 307; *Jones*, 610 F. Supp. at 359. And if the judge's testimony is required, recusal is likely to be necessary.

Furthermore, Evergreen may well be able to obtain relief without bringing a breach of contract claim. The court has "inherent limited authority to enforce compliance with court orders and ensure judicial proceedings are conducted in an orderly manner." *Jones v. Lincoln Elec. Co.*, 188 F.3d 709, 737 (7th Cir. 1999); 18 U.S.C. § 401. The court has the power to order remedial sanctions "to compensate [Evergreen] for losses sustained as a result of [Eber's and/or the DS Entities'] noncompliance with an existing court order." *Id.* at 738 (emphasis omitted).

That said, the court sees no reason to restrict Evergreen's remedy to a contempt proceeding. For one thing, the fact that agreements are enforceable by order of court does not mean that the agreements cannot also constitute contracts. Further, "[t]o hold a party in contempt, the district court must be able to point to a decree from the court which set[s] forth in

---

[2]The statute of limitations in Illinois for breach of contract claims is five years for oral contracts and ten years for written contracts. 735 ILCS 5/13-205 and 206.

specific detail an unequivocal command which the party in contempt violated." *D. Patrick, Inc.*

*v. Ford Motor Co.*, 8 F.3d 455, 460 (7th Cir. 1993) (citation and internal quotation marks

omitted). If the order is not clear, but rather simply refers to an agreement of the parties on a

certain subject and is ambiguous as to what exactly is required (*e.g.*, the court's orders regarding

the Standstill Agreement, which is an oral agreement evidently not reduced to writing), does this

mean the injured party has no remedy? In a contract case, in the event of an ambiguity, the court

could hear evidence on the parties' intent. This would not be permissible in a contempt

proceeding because "the very ambiguity necessitating such evidence rules out the possibility that

the respondent has violated an *unequivocal* command of a court order." *Id.* Moreover, parties

could reach an agreement during the course of litigation that has the effect of taking some portion

of the case out of contention, but fail to memorialize the agreement through the entry of an

agreed order. If one party later violates the agreement, the aggrieved party could not initiate a

contempt proceeding because no court order was entered. Should that mean there is no remedy?

Limiting an aggrieved party to a contempt remedy is more problematic that the opposite,

although the opposite presents a multitude of problems. An aggrieved party should be quite

careful in deciding how to proceed, however, given the possibility of disqualification and other

complications.

Finding that Evergreen's breach of contract claims must be evaluated just like any other

breach of contract claim, the court turns to its analysis of the two motions to dismiss, count by

count.

## II.    Motion to Dismiss Counts Against Eber & ANB

Evergreen sued Eber for replevin of the Cargo (Count I) and breach of contract, based on

7

Eber's alleged breach of the Agreed Order (Count V). Eber has moved to dismiss both counts against him for failure to state a claim under Fed. R. Civ. P. 12(b)(6). Evergreen also sued ANB for conversion (Count VII). ANB adopted Eber's motion to dismiss, arguing only that if there is no basis for claims against Eber then there is no basis for claims against ANB. As a result, the court's ruling on Eber's motion determines the outcome of ANB's motion to dismiss as well.

Regarding the replevin claim against Eber, Evergreen adequately states a claim. In Illinois, an action for replevin is governed by statute.[3] *See* 735 ILCS 5/19-101 *et seq.* To state a claim, a plaintiff must allege that (1) plaintiff is lawfully entitled to possession of the property, (2) defendant is wrongfully detaining the property, and (3) that defendant has refused to surrender possession of the property to plaintiff. *Int'l Harvester Credit Corp. v. Helland*, 474 N.E.2d 882, 884 (Ill. App. Ct. 1985).[4]

According to Eber, Evergreen's pleadings establish that the Cargo is not in his possession, and thus Evergreen cannot bring a replevin claim against him. In support of this

---

[3]The statute requires a verified complaint, 735 ILCS 5/19-104, and Illinois courts have ruled that the statute must be strictly followed, *Int'l Harvester Credit Corp. v. Helland*, 474 N.E.2d 882, 884 (Ill. App. Ct. 1985). Both the original and first amended complaints were verified, but for whatever reason, the second amended complaint was not. None of the defendants raised this flaw in their motions to dismiss, however, and thus have waived any objection. *See Frink v. Flanagan*, 1844 WL 4052, at *2 (Ill. 1844) (affidavit does not affect court's jurisdiction in replevin action, so defendant's appearance and pleading without raising flaw in affidavit constituted waiver).

[4]If plaintiff states a claim, the court then conducts a hearing to determine whether to issue an order of replevin. *Harris Graphics Corp. v. F.C.L. Graphics, Inc.*, No. 84 C 5814, 1987 WL 13433, at *1 (N.D. Ill. 1987) (citing 735 ILCS 5/19-105). Provided that plaintiff demonstrates a *prima facie* case for possession and a probability of success on the merits, the court will issue an order of replevin. *Id.* (citing 735 ILCS 5/9-107). If an order of replevin is issued, plaintiff can post a bond and take possession of the property, or defendant can post a bond and retain possession. *Id.* (citing 735 ILCS 5/9-109 and 112). "[T]he court then holds a trial on the merits and enters a final judgment." *Id.*

argument, Eber points to Evergreen's allegation that "[o]n September 24, 2001, an asset purchase

transaction closed between Mr. Eber and [DS-U.S.]." (Sec. Am. Compl. at ¶ 22.) Essentially,

Eber claims that Evergreen has pled itself out of court with this allegation, which in Eber's view

clearly shows that he no longer has possession. The court disagrees. Paragraph 22 does not

establish that Eber no longer has possession. Rather, paragraph 22 refers specifically to Exhibit

5, the bill of sale between Eber & DS-U.S. And that bill of sale excludes from the sale "[a]ny

rights in product or inventory subject to [the] Evergreen litigation." (Sec. Am. Compl. at Ex. A

to Ex. 5.) That allegation therefore supports an inference that the Cargo remains in Eber's

control, even if it is not in his actual possession. An allegation that a defendant has constructive

possession—*i.e.*, "such a control over the property that he may deliver the possession of it to the

plaintiff"—is sufficient to meet the possession element of a replevin claim. 66 Am. Jur. 2d,

Replevin, § 19 (2001). Eber's challenge to the replevin claim therefore fails.

Eber's challenge to the breach of contract claim raises a closer question. Under Illinois

law, to succeed on a breach of contract claim "a plaintiff must establish (1) the existence of a

valid and enforceable contract, (2) his own performance under the terms of the contract, (3) a

breach of contract by the defendant, and (4) an injury suffered as a result of the defendant's

breach." *Petri v. Gatlin*, 997 F. Supp. 956, 964 (N.D. Ill. 1997). Eber claims that Evergreen has

failed to adequately allege a breach of the agreement memorialized in the Agreed Order because

Evergreen alleges only that he sold the Cargo, but does not allege how the sale(s) breached the

terms of the Agreed Order. It is true that Evergreen does not allege how Eber breached the terms

of the Agreed Order. Rather, Evergreen specifies the terms of the Agreed Order and alleges that

Eber breached that agreement by selling 7999 cartons of Cargo. The court has no doubt that

9

Evergreen's claim for breach of contract would fail to meet the fact-pleading standard of the Illinois state courts. But it does not necessarily follow that the claim fails under the more liberal notice pleading standard applicable to actions in federal courts. *Id.* at 964-65.

"The system of notice pleading embodied in the federal rules of civil procedure does not favor dismissals for failure to state a claim." *Gray v. County of Dane*, 854 F.2d 179, 182 (7th Cir. 1988). Under Rule 8, a plaintiff need provide only "a short and plain statement of the claim that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Leatherman v. Tarrant County Narcotics & Intelligence Coordination Unit*, 507 U.S. 163, 168 (1993) (internal quotation marks omitted) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957) (footnote omitted)). A plaintiff provides fair notice as long as "sufficient facts [have been] been pleaded to allow [the defendant] and the district court to understand the gravamen of the plaintiff's complaint." *Kyle v. Morton High Sch.*, 144 F.3d 448, 455 (7th Cir. 1998) (internal quotation marks and citation omitted).

Evergreen's allegations regarding Eber's purported breach are sufficient to provide fair notice of its claim. Evergreen alleged the terms of the Agreed Order between DSI and Evergreen, which stated in relevant part that if DSI opted to retain the Cargo and sell it, DSI could do so only in the ordinary course of business and had to handle any sales proceeds in accordance with the procedures set forth in the Agreed Order. Evergreen further alleged that Eber agreed to be bound by that order, that he subsequently sold 7999 cartons of the Cargo, and in doing so, breached the Agreed Order. What is missing is an allegation addressing how Eber's sale constitutes a breach. But the court (and Eber) can infer from the terms of the Agreed Order how Eber allegedly breached the parties' agreement when he sold the Cargo: by not selling the

10

Cargo in the ordinary course of business and/or by failing to handle the sales proceeds in accordance with the Agreed Order. In ruling on a motion to dismiss, the court gives Evergreen "the benefit of imagination, so long as the hypotheses are consistent with the complaint." *Petri*, 997 F. Supp. at 965 (quoting *Sanjuan v. Am. Bd. of Psychiatry & Neurology, Inc.*, 40 F.3d 247, 251 (7th Cir. 1994)). That inference saves Evergreen's breach of contract claim against Eber.

Accordingly, Eber's motion to dismiss, which ANB joined, is denied.

## III.     Motion to Dismiss Counts Against the DS Entities and Lubelfeld

The DS Entities and Lubelfeld seek dismissal of each of Evergreen's claims against them: the replevin claim against all of them (Count I); the fraud and conversion claims against Lubelfeld (Counts II and III, respectively); the breach of contract claim against the DS Entities (Count VI); and the conversion claim against all of them (Count VIII). The court considers each claim in turn.

### A.     Replevin

The DS Entities and Lubelfeld raise one challenge to the replevin claim: that under no set of facts will Evergreen be able to establish its entitlement to possession of the Cargo because Evergreen relinquished any and all possessory rights when it consented to the Agreed Order. The defendants argue that it is clear from the terms of the Agreed Order that Evergreen relinquished any replevin rights, and that the claim should be dismissed under the election of remedies doctrine. These arguments have no merit.

Despite the DS Entities/Lubelfeld's argument to the contrary, Evergreen did not relinquish its replevin claim by agreeing to adhere to the Agreed Order. That order reflected an agreement between Evergreen and DSI to resolve their dispute and agree to have the court vacate

11

the TRO. It was not a judgment, a settlement agreement, or a release of claims. Evergreen's

claim for replevin and injunctive relief was not dismissed, but was stayed. When DSI allegedly

breached its obligations under the Agreed Order, Evergreen properly returned to the court.

Further, the election of remedies doctrine is a procedural rule that has no relevance to this

case.[5] Had the parties done minimal research on this point, they would have known that "[s]ince

the adoption of the Federal Rules of Civil Procedure, the doctrine of election of remedies is no

longer applicable in federal cases."[6] *Wagner v. Bache, Halsey, Stuart, Shields, Inc.*, No. 82 C

1651, 1985 WL 2590, at * 2 (N.D. Ill. Sept. 16, 1985) (citing *Bernstein v. United States*, 265

F.2d 697 (10th Cir. 1958)).

### B.    Fraud: Lubelfeld

Lubelfeld seeks dismissal of the fraud claim against him on the grounds that Evergreen

has failed to plead fraud with particularity. The court agrees that Evergreen has not met the

heightened pleading requirements of Fed. R. Civ. P. 9(b) in its claim against Lubelfeld.

---

[5]The other cases which the DS Entities/Lubelfeld rely on are inapposite. For example, in *Kaiser v. Standard Oil Co.*, 89 F.2d 58, 59 (5th Cir. 1937), the court found that once a judgment is rendered and the plaintiff accepts full payment of the judgment, the plaintiff cannot later appeal the judgment. Unlike *Kaiser*, this case involves neither a judgment nor an appeal from a judgment. Moreover, unlike the defendant in *Kaiser* who paid the judgment, DSI allegedly did not comply with the terms of the Agreed Order.

[6]Even if the doctrine were applicable in federal cases, it would be irrelevant here. Under the doctrine, "the prosecution of one remedial right to judgment or decree constitutes an election barring subsequent prosecution of inconsistent remedial rights." *Majcher v. Laurel Motors, Inc.*, 680 N.E.2d 416, 421 (Ill. App. Ct. 1997) (quoting *Lempa v. Finkel*, 663 N.E.2d 158 (Ill. App. Ct. 1996)). There is no subsequent prosecution of an inconsistent action here. Evergreen amended its complaint in this action. It did not receive a judgment in one case then institute a second action seeking either an inconsistent remedy or double recovery. *See id.* at 421-22; 25 Am. Jur. 2d, Election of Remedies, § 2 (1996) (purpose of doctrine is to prevent double recovery for one injury).

A corporate officer, such as the Chief Financial Officer ("CFO"), is liable for fraud if he actively participates in or personally authorizes the fraudulent conduct. *See, e.g., Hannah v. Midwest Center for Disability Evaluation, Inc.*, 536 N.E.2d 888, 892 (Ill. App. Ct. 1989). But Evergreen has failed to allege how, when, or where Lubelfeld participated in or authorized DSI's purported fraud. *See Alexander v. Continental Motor Werks, Inc.*, No. 95 C 5828, 1996 WL 79403, at *7 (N.D. Ill. Feb. 16, 1996). Evergreen alleges that Lubelfeld was DSI's CFO, knew that DSI did not (and would not) have the original bills of lading because it had not paid (and would not be able to pay) for the Cargo, and therefore knew DSI was not entitled to have the Cargo released to it. These allegations support Lubelfeld's knowledge of the alleged fraud, but do not indicate that he actively participated in or personally authorized the fraudulent conduct. Knowledge may be averred generally in a fraud claim. Nevertheless, allegations of knowledge, without more, are insufficient to state a fraud claim.[7] *Id.* Accordingly, the fraud claim against Lubelfeld is dismissed without prejudice.

**C.    Conversion: Lubelfeld**

To establish conversion, a plaintiff must demonstrate that: "(1) he has a right to the property; (2) he has an absolute and unconditional right to the immediate possession of the property; (3) he made a demand for possession; and (4) the defendant wrongfully and without authorization assumed control, dominion, or ownership over the property." *Cirrincione v. Johnson*, 703 N.E.2d 67, 70 (Ill. 1998). Lubelfeld challenges the conversion claim on the following grounds: that the claim is based on fraud and thus Evergreen failed to plead with

---

[7]Lubelfeld also argues that Evergreen failed to allege reliance. Had Evergreen adequately alleged Lubelfeld's active participation in or authorization of the fraud, Evergreen's reliance allegations would be sufficient.

sufficient particularity, and that Evergreen cannot demonstrate a right to immediate possession of goods. The latter argument merely restates the argument that Evergreen relinquished its possessory rights when it consented to the Agreed Order. The court already rejected that contention argument in Section II.A above and therefore does not address it further. The court also rejects Lubelfeld's contention that Evergreen must plead conversion with particularity. Conversion "does not require wrongful intent, and is not excused by care, good faith, or lack of knowledge." 18 Am. Jur. 2d, Conversion, § 3 (1985).

Nevertheless, as with fraud, a corporate officer may be held liable for conversion only if he actively participated in or personally authorized the conversion. *Veteran Supply Co. v. Swaw*, 548 N.E.2d 667, 670 (Ill. App. Ct. 1989); *Hannah*, 536 N.E.2d at 892. Although the court construes all well-pled facts and makes all reasonable inferences from those facts in favor of Evergreen, to survive a motion to dismiss "a complaint must state either direct or inferential allegations concerning all of the material elements necessary for recovery. . . ." *Carl Sandburg Vill. Condo. Assoc. No. 1 v. First Condo. Dev. Co.*, 758 F.2d 203, 207 (7th Cir. 1985). Evergreen's allegations (described above in Section II.B), without more, are not enough for the court to infer that Lubelfeld actively participated in or authorized DSI's purported conversion of the Cargo.[8] The conversion claim against Lubelfeld is therefore dismissed without prejudice.

### D. Breach of Contract: DS Entities

The DS Entities seek dismissal of the breach of contract claim on the grounds that the

---

[8]Lubelfeld also argues that Evergreen failed to allege it made a demand for possession of the goods. Although the court need not address this argument, the court notes that Evergreen expressly alleged that it demanded possession from DSI, (Sec. Am. Compl. at ¶ 37), which might be sufficient to show demand against its CFO as well.

Standstill Agreement is not a contract. Additionally, they argue that Evergreen could not have sustained an injury because it has no possessory interest in the Cargo that is the subject of the Standstill Agreement. Because the second argument merely repeats an argument the court has already rejected, the court addresses only the first.

In Illinois, "[t]he elements of a breach of contract claim are: (1) the existence of a valid and enforceable contract; (2) performance by the plaintiff; (3) breach of contract by the defendant; and (4) resultant injury to the plaintiff." *Henderson-Smith & Assoc., Inc. v. Nahamani Family Serv. Center, Inc.*, 752 N.E.2d 33, 43 (Ill. App. Ct. 2001). The question is whether Evergreen stated "either direct or inferential allegations" regarding the first element. *Carl Sandburg*, 758 F.2d at 207. Although Evergreen alleged that the Standstill Agreement constitutes a valid, enforceable agreement, (*see* Sec. Am. Compl. at ¶ 48), that allegation is a legal conclusion which the court need not, and does not, accept as true in ruling on a motion to dismiss. *Yale Sec., Inc. v. Freedman Sales, Ltd.*, No. 96 C 6501, 1997 WL 51428, at *2 (N.D. Ill. Feb. 3, 1997). Thus the court must determine whether other allegations in the Second Amended Complaint permit a reasonable inference that the Standstill Agreement constitutes a valid, enforceable contract.

Formation of a contract requires an offer, acceptance and consideration. *Chicago Limousine Serv., Inc. v. City of Chicago*, 781 N.E.2d 421, 426 (Ill. App. Ct. 2002). The DS Entities contend there was no consideration for the Standstill Agreement because Evergreen gave nothing of value in exchange for the DS Entities' agreement not to dispose of the Cargo.[9]

---

[9]Evergreen had no opportunity to respond to this argument because the DS Entities raised this argument in their reply brief.

"Consideration consists of some detriment to the offeror, some benefit to the offeree, or some bargained-for exchange between them. Any act or promise which is of benefit to one party or disadvantage to the other is a sufficient consideration to support a contract." *Doyle v. Holy Cross Hosp.*, 708 N.E. 2d 1140, 1145 (Ill. 1999) (internal quotation marks and citation omitted). In the Second Amended Complaint, Evergreen alleges that on October 25, 2001, the court vacated the default judgment that had been entered against DS-International after DS-US appeared and acknowledged it had possession of the Cargo. In a telephonic hearing the next day, the DS Entities agreed not to dispose of the Cargo. (Sec. Am. Compl. at ¶ 23.) It is reasonable to infer that Evergreen agreed not to oppose the motion to vacate the default judgment provided that the DS Entities agreed not to dispose of the Cargo. That bargained-for exchange is enough at this stage of the proceedings to show there was consideration. The allegations in paragraph 23, and the reasonable inferences that stem from it, are therefore sufficient to withstand the motion to dismiss.

### E.    Conversion: DS Entities & Lubelfeld

In Count VIII, Evergreen brings a conversion claim against both the DS Entities and Lubelfeld, claiming that these defendants have unlawfully received and retained proceeds from sales of the Cargo made by DSI, Eber and/or themselves. The defendants argue that Evergreen is attempting to enforce its right to an indeterminate amount of money rather than a specified, identifiable fund, and thus fails to state a claim under Illinois law.

Before going any further, the court dismisses without prejudice Count VIII as it relates to Lubelfeld for the reasons explained above in Section II.C. Turning to the claim as it relates to the DS Entities, Evergreen clearly states a claim with respect to the proceeds of any sales made by

the DS Entities (as opposed to sales by DSI or Eber) because "[a] person who wrongfully sells personal property in which another person has an interest is liable for conversion." 18 Am. Jur. 2d, Conversion, § 39 (1985). The DS Entities cannot escape liability for conversion by selling the Cargo while this litigation was pending rather than retaining possession.

The remaining question is whether Evergreen states a claim for conversion with respect to the proceeds the DS Entities received from sales made by its predecessors, DSI and Eber. Under Illinois law, the property at issue in a conversion action must be "an identifiable object of property of which the plaintiff was wrongfully deprived. Money may be the subject of conversion, but it must be capable of being described as a specific chattel, although it is not necessary for purposes of identification that money should be specifically earmarked." *In re Thebus*, 483 N.E. 2d 1258, 1260 (Ill. 1985). A plaintiff who claims a right to an indeterminate amount of money rather than to a specified, identifiable fund cannot bring a claim for conversion. *Sutherland v. O'Malley*, 882 F.2d 1196, 1200 (7th Cir. 1989). "Money is a specified and identifiable fund when it is not an estimate but rather 'a specific amount transferred to [the defendant] from an outside source.'" *Desmond & Ahern, Ltd. v. Scheffki*, No. 01 C 6098, 2001 WL 1646562, at *10 (N.D. Ill. Dec. 21, 2001) (quoting *Roderick Dev. Inv. Co., Inc. v. Cmty. Bank of Edgewater*, 668 N.E.2d 1129, 1135 (Ill. App. Ct. 1996)).

The money Evergreen seeks to recover is a specified, identifiable fund: Evergreen seeks the proceeds from the sales of the specific chattel, *i.e.*, certain cartons of Cargo. The DS Entities argue that this amount is an indeterminate sum, but the court disagrees. In its Second Amended Complaint, Evergreen specifically identified all of the Cargo at issue and attached an exhibit prepared by one of the defendants documenting some of the sales of the Cargo. The fact that

17

Evergreen will need discovery to determine precisely the amount of Cargo sold and the amount of proceeds the DS Entities received does not make this an estimated claim or a claim for an indeterminate sum. The money Evergreen seeks is identifiable by its source and description—*i.e.*, the proceeds from the sales of expressly identified goods—which is sufficient under Illinois law to constitute a determinate sum. *Chicago Dist. Council of Carpenters Welfare Fund v. Gleason & Fritzshall*, 693 N.E.2d 412, 416 (Ill. App. Ct. 1998) (where plaintiff was entitled to reimbursement for certain specified medical expenses from $50,000 settlement check, fact that determination had to be made regarding how much of the check was attributable to such expenses did not make plaintiff's claim a claim for an indeterminate amount; source and description were sufficient to identify converted money).

The cases the DS Entities rely on are distinguishable and thus do not compel a different result. *Eggert v. Weisz*, 839 F.2d 1261 (7th Cir. 1988)—which was decided after discovery and trial, not through a motion to dismiss—is distinguishable because, unlike the case at bar, it involved a debtor-creditor relationship. In *Eggert*, the plaintiff had given a stamp collection to defendant to sell on consignment. Rather than collecting the proceeds of the sales, the plaintiff left the proceeds on deposit with defendant. *Id.* a 1262. More than a year later, the plaintiff made several requests for payment from the defendant's successor, then sued for conversion when he was not paid. *Id.* at 1263. The Seventh Circuit held, in view of plaintiff's failure to show that his funds were segregated from defendant's other funds, that the defendant's liability was for a debt, not conversion.[10] *Id.* at 1265.

_____

[10]Intervening decisions from the Illinois courts appear to part company from *Eggert* on this point, concluding that it is unnecessary to show physical segregation of assets to state a claim for a specified, identifiable fund. *See, e.g., Roderick*, 668 N.E.2d at 1137; *see also Chicago*

In Illinois, "the general rule is that conversion will not lie for money represented by a general debt or obligation. It must be shown that the money claimed, or its equivalent, at all times belonged to the plaintiff and that the defendant converted it to his own use." *In re Thebus*, 483 N.E. 2d at 1260. "[A] debtor-creditor relationship is created when a party (creditor) transfers his property voluntarily to another (debtor)." *Roderick*, 668 N.E.2d at 1135. The case at bar does not involve a debtor-creditor relationship because there was no voluntary transfer of property. The relevant transfer of property occurred when Evergreen released the Cargo to DSI. Evergreen released the Cargo only because DSI gave the false impression that it had the original bills of lading, and thus was entitled to receive the Cargo. Because the transfer was based on false pretenses, the transfer was not voluntary. *See Firstar Bank, N.A. v. Faul*, No. 00 C 4061, 2001 WL 1636430, at *8 (N.D. Ill. Dec. 20, 2001) (no voluntary transfer where property transferred based on false pretenses fostered by recipient). According to Evergreen, DSI accepted the Cargo and sold it knowing full well that it had no right to the property in the first place. Evergreen's claim for conversion is based on defendants' wrongful possession and disposition of specific chattel and wrongful retention of proceeds from the sale of specific chattel, not on defendants' "mere obligation to pay money," *In re Thebus*, 483 N.E.2d at 1260.

The DS Entities also rely on *Sutherland*, a case in which the Seventh Circuit affirmed the district court's decision to grant summary judgment in favor of the defendant on a conversion claim because the claim was for an indeterminate sum of money. *Sutherland*, 882 F.2d at 1199,

---

*District Council*, 693 N.E.2d at 416. And significantly, at least one Illinois appellate court has opined that some federal courts applying Illinois law have placed undue emphasis on the segregation factor. *Roderick* at 1137; *see also, LFG, LLC v. Navarre*, No. 01 C 9451, 2002 WL 1379112, at *3 (N.D. Ill. June 26, 2002) (recognizing that under Illinois law, a specific, identifiable fund is not the equivalent of segregated funds).

1201. But the facts in that case are quite different from the case at bar. Plaintiff Sutherland was an attorney who had a contingency fee contract to handle a personal injury case. At Sutherland's request, defendant O'Malley agreed to act as co-counsel on the case and the attorneys agreed to either split the attorneys' fees "on a fifty-fifty basis or other equitable arrangement based on the degree of effort [each attorney put into the case] . . . ." *Id.* at 1198. When the case settled, O'Malley notified Sutherland he was holding the full amount of the attorneys' fees and costs until they reached further agreement on how to divide the money equitably; Sutherland then brought a conversion claim. *Id.* at 1198. The Seventh Circuit agreed with the district court that Sutherland was entitled only to a portion of the fees, and that her portion was indeterminate. *Id.* at 1200. That result makes sense given that the parties' fee-splitting agreement was subject to "equitable arrangement based on the degree of effort . . . ." Unlike *Sutherland,* in the case at bar the amount does not depend on equitable considerations or estimates. It should be able to be clearly determined by reviewing the parties' records.

The DS Entities' motion to dismiss the conversion claim is therefore denied.

## Conclusion

For the foregoing reasons, Eber's motion to dismiss is granted in part and denied in part, as is the motion to dismiss filed by DS-U.S., DS-International and Lubelfeld. ANB's motion to dismiss is denied.

ENTER:

JOAN B. GOTTSCHALL
United States District Judge

DATE: March 10, 2003

20